**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **KOMAA MNYOFU, individually and as next friend of his daughters AYANNA MNYOFU and MAKAYLAH MNYOFU,** ) ) ) ) | |
| **Plaintiffs,** ) ) | |
| **vs.** ) ) | **Case No. 11 C 3756** |
| **BOARD OF EDUCATION OF MATTESON ELEMENTARY SCHOOL DISTRICT 162, BLONDEAN DAVIS, VILLAGE OF MATTESON, MICHAEL JONES, JEREMY SIMS, and SHAUN WHITE,** ) ) ) ) ) ) ) | |
| **Defendant.** ) ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW  F. KENNELLY, District Judge:

Komaa Mnyofu has asserted claims on behalf of himself and his two daughters against the Board of Education of Matteson Elementary School District 162 (the "Board"), the district superintendent Blondean Davis, the Village of Matteson (the "Village"), and three Matteson police officers.  Defendants have moved to dismiss all of Mnyofu's claims.  For the reasons stated below, the Court grants their motions in part and denies them in part.

### Facts

The Court draws the following facts from Mnyofu's complaint and accepts them as true for purposes of the motion to dismiss.  *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009).

Mnyofu describes himself as a "community and education reform activist and frequent speaker and commentator on the management, policies and practices of the schools, and their administrators" in his children's school district. Am. Compl. ¶ 1. From October 2008 to February 13, 2009, he worked as a paraprofessional (a teacher's aide) at the Huth School in Matteson. As a paraprofessional, he was subject to a collective bargaining agreement (CBA) between the Board and a union representing support personnel. After Mnyofu's employment was terminated, which he protested in various ways, he alleges that defendants engaged in a campaign of harassment against him in retaliation for his exercise of his First Amendment free speech rights.

Mnyofu alleges that during his employment, he expressed to Davis and Huth school principal Ronald Jones that he did not believe they were "comply[ing] with their obligations under the CBA and Illinois law regarding the investigation and resolution of student and parent complaints." *Id.* ¶ 23. On February 11, 2009, Mnyofu asked his union representative to "exercise [Mnyofu's] rights as a continuing employee and file a grievance on his behalf against Principal Jones for his failure to take action to properly respond to the various complaints that had been directed at [Mnyofu]." *Id.* ¶ 24. On February 12, Mnyofu went to the district office where Davis works to request a form. Defendants claim that Mnyofu created a disturbance while he was there, but Mnyofu denies this. On February 13, Mnyofu received a letter indicating that Davis had terminated his employment.

On February 17, Mnyofu attended a public meeting of the Board because he wanted to speak about the issues he had raised before being terminated. The Board's president did not allow him to speak and stated that Davis's decision was "binding on

the Board." *Id.* ¶ 29.

On February 23, Mnyofu filed a grievance challenging his termination. He served the grievance on Davis pursuant to procedures established by the CBA. He never received a response to the grievance. On February 24, Mnyofu went to the district office to deliver the grievance. While he was there, someone in the office phoned the Matteson police and asked for an officer to come to the office. Mnyofu alleges that Davis directed the employees in the office to give false statements to the police about his behavior.

At a meeting of the Board on March 17, Mnyofu again attempted to speak during the public speaking portion of the meeting. The Board's president again refused to allow him to speak about his termination or the policies that he had protested. After the meeting was over, the Board's attorney Robert Hall handed Mnyofu two letters from Davis. The first accused Mnyofu of multiple violations and demanded that he cease contact with district personnel. The second notified him that his children would be dis-enrolled from the district's schools because they were not residents of the district. The letter also requested payment of "out-of-district" tuition. Mnyofu believed that this would violate his rights because he and his children were homeless, and he engaged the Illinois Homeless Advocate to prevent these actions from occurring.

On March 20, Mnyofu left a restaurant in Matteson with his daughters, who at the time were six and ten years old. As they were getting into his car, they were surrounded by defendants Michael Jones, Jeremy Sims, and Shaun White, who are Matteson police officers. The officers "surrounded Plaintiff's vehicle each with his gun brandished, [waving] and pointing at Plaintiff Mnyofu and his minor children, and yelling

and demanding that Plaintiff get out of the vehicle." *Id.* ¶ 46. Mnyofu claims that Jones told him he was "causin' problems with Blondean Davis and employees and students at school district 162 and now the police are involved." *Id.* ¶ 47. He also alleges that the officers used profanities and threatened to take his children to jail and terminate his custody of them. A friend of Mnyofu's at the restaurant then watched the children while the officers arrested Mnyofu and took him to the police station, where he alleges that they falsely charged him with traffic offenses. Mnyofu was also charged with disorderly conduct, which he claims was based on false information that Davis gave the police about his February 12 visit to her office. The proceedings based on the criminal complaint and the traffic tickets are currently pending in state court.

On or around March 23, "Defendant Jones, on direction of Defendant Davis, phoned . . . a DCFS [(Department of Children and Family Services)] Hotline and falsely reported that Plaintiff was abusing his children and . . . had been driving erratically and was arrested for running a car off the road." *Id.* ¶ 58. Mnyofu later "received notice that the DCFS complaint against him was determined to be unfounded and without basis." *Id.* ¶ 74.

Davis sent Mnyofu two more letters in March. In one letter, she told Mnyofu that his children would no longer be allowed to ride the bus to school and that he would have to drop them off and pick them up. In the second, she stated that Mnyofu could not speak to anyone who worked for or was affiliated with the school district.

On April 3, Davis appeared at a court proceeding on Mnyofu's disorderly conduct charge and stated that she was the complaining witness. On June 4, Hall filed an appearance in Mnyofu's criminal proceedings. On June 8, Hall filed a motion to quash

subpoenas for records directed at Davis and the Board. Mnyofu also alleges that on

that date, Jones filed a second false criminal complaint alleging that Mnyofu had

committed a criminal trespass on February 12.

Mnyofu filed this lawsuit on June 2 or 3, 2011.

## Discussion

On a motion to dismiss under Rule 12(b)(6), the Court accepts the facts stated in

the complaint as true and draws reasonable inferences in favor of the plaintiff. *Hallinan*,

570 F.3d at 820. To survive the motion, the complaint must include enough facts to

state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S. Ct. 1937,

1950 (2009). A claim is plausible on its face "when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* at 1949.

## 1.     Count one - First Amendment retaliation claim

In count one of his amended complaint, Mnyofu asserts a claim against Davis

under 42 U.S.C. § 1983 for retaliation on the basis of protected First Amendment

activity.[1] To prevail on this claim, Mnyofu must show that "(1) he engaged in activity

protected by the First Amendment; (2) he suffered a deprivation that would likely deter

First Amendment activity in the future; and (3) the First Amendment activity was at least

a motivating factor in the Defendants' decision to take the retaliatory action." *Bridges v.*

*Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (internal quotation marks and citation

omitted).

_____

[1]Mnyofu has withdrawn this claim with regard to all defendants other than Davis.

Davis seeks to dismiss count one on the grounds that it is barred by the statute of limitations and that she is immune from suit.

### a.    Statute of limitations

Davis argues that Mnyofu's claim is based exclusively on events that occurred in February and March 2009 and is therefore barred under the two-year statute of limitations that applies to actions under § 1983 in Illinois.  *See Clark v. City of Braidwood*, 318 F.3d 764, 766 (7th Cir. 2003).  Although "complaints typically do not address affirmative defenses, the statute of limitations may be raised in a motion to dismiss if the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense."  *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (citation and internal quotation marks omitted).

Mnyofu essentially makes three assertions in response to Davis's argument: actionable conduct in the form of involvement with his criminal case occurred after June 3, 2009; this conduct can be tied to events prior to that date under the "continuing violation" doctrine, enabling him to sue based on the entire course of conduct; and he did not discover the true nature or scope of his injuries or defendants' actions until after June 3.

According to the amended complaint, the following actionable conduct occurred after June 3.  Hall filed an appearance in Mnyofu's criminal proceeding and moved to quash three subpoenas "in order to prevent Plaintiff from obtaining documents essential to his defense."  Am. Compl. ¶ 70.  While in Court on June 8, Hall "volunteered information (the confidential settlement agreement [from another case that Mnyofu brought]) to the Assistant State's Attorney . . . that Hall claimed showed that Plaintiff

6

was not indigent and was not entitled to a Public Defender." *Id.* ¶ 71. The same day, Jones prepared a false complaint charging Mnyofu with trespass to property. Mnyofu alleges that all of this occurred at Davis's direction.

"[R]etaliation need not be monstrous to be actionable under the First Amendment; it need merely create the potential for chilling employee speech on matters of public concern." *DeGuiseppe v. Vill. of Bellwood*, 68 F.3d 187, 192 (7th Cir. 1995). An employee "need not show that his comments . . . led to his termination[;] . . . false accusations . . . may suffice," *id.*, as may other "minor harassment [that is] sufficient to deter the exercise of free speech." *Mosely v. Bd. of Educ. of City of Chi.*, 434 F.3d 527, 534 (7th Cir. 2006).

Mnyofu's allegation that Davis caused a false criminal complaint to be filed against him states a claim for First Amendment retaliation, because falsely inducing a prosecution against a person might chill the person's speech. Because this conduct allegedly occurred within the two-year limitations period, count one survives to the extent that it is based on the allegation that Davis caused the filing of a false criminal complaint. The same is true of defendants' alleged interference with Mnyofu's representation by a public defender.

Mnyofu also alleges that Davis's motion to quash subpoenas that had been directed at her was a retaliatory action "taken to interfere with Plaintiff's defenses to the charges Defendant Davis had trumped up." Am. Compl. ¶ 70. Unlike the allegations of false charges and interference with representation, however, a motion to quash subpoenas in pending litigation – a common procedural step taken in the course of litigation – does not have the same sort of potential to deter the litigant's exercise of his

7

First Amendment rights.  In addition, the allegations in the amended complaint do not indicate that the motion had that effect in this case.  The filing of the motion to quash therefore cannot be a basis for relief under count one.

Mnyofu contends that the Court may consider Davis's pre-June 3 conduct under the so-called continuing violation doctrine.  His allegations and the arguments in his brief also indicate that he believes he can obtain relief for the earlier conduct under the discovery rule, although he does not invoke that doctrine by name.

The purpose of the doctrine of continuing violation is "to allow suit to be delayed until a series of wrongful acts blossoms into an injury on which suit can be brought." *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 801 (7th Cir. 2008).  "A typical case is" workplace sexual harassment, in which "[t]he first instance of a coworker's offensive words or actions may be too trivial to count as actionable harassment, but if they continue they may eventually reach that level and then the entire series is actionable."  *Id.*  "If each harassing act had to be considered in isolation, there would be no claim even when by virtue of the cumulative effect of the acts it was plain that the plaintiff had suffered actionable harassment."  *Id.*  "It is thus a doctrine not about a continuing, but about a cumulative violation."  *Id.*  "The continuing violation doctrine, however, does not apply to a series of discrete acts, each of which is independently actionable, even if those acts form an overall pattern of wrongdoing."  *Kovacs v. United States*, 614 F.3d 666, 676 (7th Cir. 2010) (internal quotation marks and citation omitted).

As indicated, Mnyofu also invokes the discovery rule, which "postpones the beginning of the limitations period to the date when the plaintiff discovers or should

8

have discovered that he has been injured." *Clark*, 318 F.3d at 767. "The cause of action accrues and the limitations period begins to run when the injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved." *In re marchFIRST Inc.*, 589 F.3d 901, 904 (7th Cir. 2009) (internal quotation marks and citation omitted). In *Clark*, the Seventh Circuit has reversed the dismissal of a complaint when the plaintiff "made reasonably clear that he was trying to allege that he did not learn of his injury until some point outside of the limitations period." *Id.* at 768. In addition, "[a] plaintiff's knowledge that his injury was wrongfully caused does not necessarily mean knowledge of actionable conduct." *In re marchFIRST*, 589 F.3d at 904.

The Court concludes that with one exception, neither of the doctrines that Mnyofu cites provides a basis for him to maintain claims based on pre-June 3, 2009 conduct. In addition to his termination, Mnyofu has alleged that during the three major incidents on which he bases his claims – the February and March Board meetings and his March arrest – he was told that his conflict with Davis had motivated the challenged actions. Even if the meetings themselves did not rise to the level of actionable conduct, his arrest certainly could have. He also received letters from Davis that, as he describes them, provided further support for his suspicion that Davis was retaliating against him. Given the officers' supposed comments about Davis while arresting Mnyofu and the background of other events against which the arrest occurred, the arrest was the latest point at which Mnyofu knew or should have known enough to "determine whether actionable conduct [was] involved." *See id.*

9

Mnyofu also asserts that he was unaware of several aspects of his claims until he received discovery or other legal documents in connection with his criminal and DCFS cases. Specifically, he asserts that he did not know that Davis's employees had given false reports at her direction, that Davis had attempted to obtain other false reports from employees and parents, or that Davis had worked with the police to cause his arrest. This information, however, was not necessary to make Mnyofu aware that he had suffered an injury that was the result of actionable conduct. For the reasons stated above, that was or reasonably should have been apparent to him already. The additional information that Mnyofu claims he received after June 3 concerned the scope of the alleged retaliatory acts, not the fact or nature of the injury.

The discovery rule does, however, entitle Mnyofu to maintain his claim for one instance of pre-June 3 conduct: his allegation that Davis directed Jones to file a false DCFS complaint against him. Although he was aware of the charge's existence before June 3, he claims that he did not know of defendants' involvement until after receiving the DCFS file on June 11, 2009, and there is no indication to the contrary in the amended complaint in this case. For the same reasons that the filing of a false criminal complaint can support a retaliation claim, this alleged conduct can do so as well.

For these reasons, the Court concludes that count one is barred by the statute of limitations except as indicated above.

### b. Remaining issues on count one

Defendants also argue that count one is barred because Davis is being sued in her official capacity; she is protected by the doctrine of qualified immunity; and her communications with police officers were privileged.

Defendants contend that Mnyofu has sued Davis in her official capacity because the complaint alleges that she used her position to commit the challenged acts. The Court disagrees. In the case that defendants cite, the Seventh Circuit established that "[w]here the plaintiff seeks injunctive relief from official policies or customs, the defendant has been sued in her official capacity; where the plaintiff alleges tortious conduct of an individual acting under color of state law, the defendant has been sued in her individual capacity." *Miller v. Smith*, 220 F.3d 491, 494 (7th Cir. 2000). In count one, Mnyofu has clearly alleged the latter rather than the former. "That a defendant *acted* in his or her official capacity does not necessarily mean that the defendant is being *sued* in that capacity." *Shockley v. Jones*, 823 F.2d 1068, 1071 (7th Cir. 1987) (emphasis in original).

Defendants argue next that if Mnyofu has brought a claim against Davis in her individual capacity, she is protected by the doctrine of qualified immunity, which establishes that "[p]ublic officials are shielded from liability if their conduct does not violate the clearly established rights of which a reasonable official would have known." *Baird v. Renbarger*, 576 F.3d 340, 344 (7th Cir. 2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

In defendants' opening memorandum, they appear to base this argument on the proposition that Mnyofu acted inappropriately and that as a result, "Dr. Davis would have been remiss if she had failed to report to the police the inappropriate and increasingly hostile behavior of Plaintiff." Board Defs.' Mem. at 9. As Mnyofu points out, however, he has stated in his complaint that he did not engage in inappropriate or hostile behavior and that Davis's contact with the police was based only on her desire to

11

retaliate against him for his speech.  Defendants' version of the facts may later turn out

to be true, but on a motion to dismiss the Court considers only the allegations in the

complaint.

Defendants also assert in their reply brief that Davis is entitled to qualified

immunity because Mnyofu's speech was not on a matter of "public concern."  *See*

*Bivens v. Trent*, 591 F.3d 555, 561 (7th Cir. 2010) (quoting *Garcetti v. Ceballos*, 547

U.S. 410, 421 (2006)) (the speech of a public employee is protected only when he

speaks "as a citizen addressing matters of public concern").  Defendants did not make

this argument, or anything like it, in their opening brief, and "[a]rguments made for the

first time in a reply brief are waived."  *United States v. Adamson*, 441 F.3d 513, 521 n.2

(7th Cir. 2006).

Even if defendants had not waived this argument, however, it would be

unavailing.  The Supreme Court held in *Garcetti* that "when public employees make

statements pursuant to their official duties, the employees are not speaking as citizens

for First Amendment purposes, and the Constitution does not insulate their

communications *from employer discipline*."  *Garcetti*, 547 U.S. at 421 (emphasis

added).  This doctrine is based on "employers' heightened interest in controlling

employee speech when necessary to manage workplace operations."  *Abcarian v.*

*McDonald*, 617 F.3d 931, 935 (7th Cir. 2010).  Mnyofu's remaining claims in count one

– arising from the alleged filing of false complaints with the police and DCFS – do not

involve "employer discipline" and did not otherwise occur in the context of his public

employment, so it is doubtful that the "public concern" test even applies.  And even if it

did, Mnyofu has alleged that he "frequently voiced his concerns regarding the policies,

12

practices, inefficiencies, corruption and favoritism within School Districts 162 and 227 and made his concerns known by attending the local school board meetings." Am. Compl. ¶ 1. This suffices for purposes of a motion to dismiss to state a claim for speech on a matter of public concern. *Cf. Houskins v. Sheahan*, 549 F.3d 480, 490 (7th Cir. 2008) (internal quotation marks and citation omitted) ("[T]he public concern element [of protected speech by a public employee] must relate to a community concern and is not satisfied by merely a personal grievance of interest only to the employee.").

Finally, defendants argue that Davis cannot be held liable to the extent that Mnyofu's claims involve her providing information to the police, because she did so in her capacity as a private citizen rather than a government official, and because (they contend) statements to the police regarding the commission of a crime are "privileged." The first of these assertions is unavailing because Mnyofu has alleged in his complaint that Davis acted, albeit improperly, in her role as superintendent, and therefore under color of law, in causing complaints to be made against him. The complaint adequately alleges that Davis's actions involved a "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *See Estate of Sims ex rel. Sims v. County of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007) (quoting *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988) (internal quotation marks omitted)).

Defendants also claim that "statements made to police officers regarding a commission of a crime are protected by an absolute privilege." *Benitez v. Am. Standard Circuits, Inc.*, No. 08 C 1998, 2009 WL 742686, at *7 (N.D. Ill. Mar. 18, 2009) (citing *Layne v. Builders Plumbing Supply Co.*, 210 Ill. App. 3d 966, 969, 569 N.E.2d 1104,

1106 (1991)).  Both *Benitez* and *Layne*, however, made such statements only in the context of a state law claim of defamation.  *See Layne*, 210 Ill. App. 3d at 969, 569 N.E.2d at 1106 (considering "[w]hether a defamatory statement is protected by an absolute or a qualified, or conditional, privilege").  No case that defendants cite or that the Court has found applies this principle in the context of a claim of retaliation for exercising First Amendment rights.  The Court therefore concludes that this does not bar Mnyofu's claim for First Amendment retaliation.

For these reasons, the Court denies defendants' motion to dismiss the remainder of count one.

## 2.    Count two - due process claim

In count two, Mnyofu asserts a claim under § 1983 that he was deprived of his right to due process of law when his employment was terminated without "notice, without an opportunity to be heard, without arbitration proceedings and without cause." Am Compl. ¶ 101.  In particular, he claims that he was denied "hearings and meetings required by the CBA and Board policy when allegations of misconduct or parent complaints are leveled against employees," that defendants "[p]urposely interpret[ed] the CBA so as to strip Plaintiff of his continuing employee status," and that defendants prevented him from submitting grievances.  *Id.*

 Defendants contend the claim is time-barred.  The Court agrees.  Mnyofu has alleged that his employment was terminated in February 2009 and that over the following two months he requested certain procedures that were not followed.  These events were sufficient to amount to "discrete acts, each of which is independently actionable." *Kovacs*, 614 F.3d at 676.  Mnyofu thus may not avail himself of the

doctrine of continuing violation. He also alleges that he was not aware until July 2009 of "the Board's position, rationale and theory regarding why it refused to respond to Plaintiff's grievances, to engage in the CBA grievance procedures or to arbitrate Plaintiff's grievances." Am. Compl. ¶ 101(e). It was not necessary for Mnyofu to know defendants' rationale, however, for him to be "possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved." *In re marchFIRST*, 589 F.3d at 904. He knew that he had been terminated, and his allegations make clear that he believed from the outset he was not afforded the proper procedures during this process. The discovery rule therefore does not save his due process claims from the statute of limitations.

For these reasons, the Court grants defendants' motion to dismiss count two.

**3.    Count three - § 1983 conspiracy claim**

In count three, Mnyofu asserts a claim for civil conspiracy against all defendants under § 1983. A conspiracy is a "combination of two or more persons acting in concert to commit an unlawful act . . . the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages." *Richardson v. City of Indianapolis*, 658 F.2d 494, 500 (7th Cir. 1981). "[T]he conspirators must act with a single plan, the general nature and scope of which is known to each would-be conspirator." *Hernandez v. Joliet Police Dept.*, 197 F.3d 256, 263 (7th Cir. 1999).

Defendants primarily argue that the conspiracy claim fails because there are no surviving allegations of underlying constitutional deprivations. The Court has already determined, however, that this is not the case with respect to several of Mnyofu's

15

allegations.  As with Davis, Mnyofu has alleged that "Jones, on direction of Defendant

Davis, phoned in a DCFS Hotline and falsely reported that Plaintiff was abusing his

children."  Am. Compl. ¶ 58.  Mnyofu claims that he did not discover who was behind

this complaint until after June 4, 2009.  He also alleged that Jones, at Davis's direction,

filed a false criminal complaint against him on June 8, 2009.  Mnyofu's claims against

Jones thus are not time-barred, and they are stated with sufficient specificity to survive

the motion to dismiss.  Moreover, although Mnyofu "cannot recover damages for those

discrete acts outside the limitations period, those earlier acts may still be used to prove

that the conspiracy existed both before and during the limitation period and harmed him

during that period."  *Geinosky v. City of Chicago*, 675 F.3d 743, 750 (7th Cir. 2012).[2]

The non-time-barred conduct, however, includes no allegations of involvement by

Sims and White, who are described in the complaint only as having participated in

Mnyofu's March 2009 arrest.  Actors who were part of a conspiracy at some point "can

still be held liable for the later actions of co-conspirators that harmed the plaintiff during

the limitations period."  *Id.*  The complaint does not indicate, however, that Sims or

White acted upon information from Davis that they knew to be false, only that they

behaved inappropriately during Mnyofu's arrest.  This is insufficient to allege their

involvement in the claimed conspiracy.  Because "conspiracy is not an independent

basis of liability in § 1983 actions," *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008),

and Mnyofu has not pled any otherwise actionable conduct, the Court dismisses count

---

[2]*Geinosky*, in which the Seventh Circuit reversed the dismissal of a civil conspiracy
claim against a city and eight police officers, also establishes the incorrectness of
defendants' argument that a conspiracy under § 1983 must include a private individual
as well as government actors.

three as against Sims and White.

Defendants also argue that count three is duplicative because it concerns no actions that are not already accounted for in count one. "Proof of civil conspiracy . . . broadens the scope of liability under § 1983 to include individuals who were part of a conspiracy but did not act directly to deprive plaintiff of his or her constitutional rights." *Smith v. Vill. of Dolton*, No. 09 C 6351, 2010 WL 744313, at *5 (N.D. Ill. Feb. 25, 2010). Mnyofu has alleged that Davis and Jones conspired to retaliate against him through Davis's direction and Jones's actions. The Court declines at this point to dismiss count three as against Davis and Jones because it is plausible that the two defendants' differing roles in the alleged conspiracy resulted in conduct by one for which the other could be liable.

The complaint contains no allegations indicating that the Board or the Village were involved in the remaining instances of actionable conduct. Accordingly, the Court dismisses count three against all defendants other than Davis and Jones.

**4.    Count four - municipal liability**

In count four, Mnyofu asserts a claim against the Board for municipal liability. He claims that the Board, through Davis, prevented him from speaking on the subjects he has identified in this lawsuit and has deprived him of his property interest in his employment without due process. The Board responds that it cannot be liable for Davis's actions because § 1983 can subject a local government entity to liability "only when the act complained of is accomplished by a defendant with final policymaking authority," *Looper Maint. Serv. Inc. v. City of Indianapolis*, 197 F.3d 908, 913 (7th Cir. 1999), and Davis is not a "final policymaker."

17

In response, Mnyofu points to portions of his complaint in which he alleges that the Board "expressly delegated and deferred decision-making and policy-making to Davis on numerous matters, including but not limited to, personnel, hiring and firing, administration and interpretation of the Collective Bargaining Agreement, and management of the schools." Am. Compl. ¶ 13. Mnyofu also alleges that when he was prevented from speaking at the Board's meetings, the president told him that Davis's decision regarding his employment was "binding on the Board." Id. ¶ 29.

Although the first of these paragraphs is essentially a legal conclusion, the other allegations might be sufficient to subject the Board to liability if Mnyofu's claims regarding his employment had survived. As the Court has ruled, however, Mnyofu's only remaining claims against Davis concern her alleged false reporting to law enforcement agencies. Mnyofu has alleged that Davis exercised significant authority with respect to "personnel policy and decisions," Pl.'s Resp. to Board Defs. at 28, but he has not stated any facts suggesting that her complaints to the police and DCFS had anything to do with carrying out personnel policy. "The official in question must be the final policymaker in the particular area or on the particular issue raised in the case." Estate of Sims, 506 F.3d at 515. The Court therefore dismisses count four.

**5.    Counts six, eight, and nine - claims on behalf of Mnyofu's daughters**

The remaining claims in the complaint are asserted on behalf of Mnyofu's daughters, Ayanna and Makaylah, against Jones, Sims, and White.[3] Count six is a claim under § 1983 for excessive force; count eight is a state-law claim for intentional

---

[3]Mnyofu has withdrawn count five.

infliction of emotional distress (IIED); and count nine is a state-law claim for assault. These claims are all based on the events surrounding Mnyofu's arrest in March 2009, but they are not barred by the statute of limitations because Mnyofu's daughters were (and still are) minors. *See* 735 ILCS 5/13-211.

Defendants argue that count six cannot survive because the complaint does not allege sufficiently specific facts and that, even if it did, the officers would be protected by qualified immunity. The Court disagrees. The complaint contains clear allegations that the officers "surrounded Plaintiff's vehicle each with his gun brandished, [waving] and pointing at Plaintiff Mnyofu and his minor children, and yelling and demanding that Plaintiff get out of the vehicle." Am Compl. ¶ 46. Mnyofu alleges that the officers used profanities and made threats, including that they would "call DCFS and have them take custody of your kids . . . meantime they're going to jail with you." *Id.* ¶ 48. This provides "enough details about the subject matter of the case to present a story that holds together." *See Swanson v. Citibank N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Moreover, the officers' conduct, as described in the complaint, would have constituted a violation of Ayanna and Makaylah's clearly established constitutional rights. "[G]un pointing when an individual presents no danger is unreasonable and violates the Fourth Amendment." *Baird*, 576 F.3d at 345. The Seventh Circuit has held that the "right to be free from excessive force [in the form of a police officer] pointing his firearm at [plaintiffs] when there was no hint of danger" is "clearly established" for purposes of qualified immunity. *Id.* at 347.

To succeed on a claim for IIED, a plaintiff must allege "extreme and outrageous" conduct that goes "beyond all bounds of decency" and is "considered intolerable in a

civilized community." *Fox v. Hayes*, 600 F.3d 819, 842 (7th Cir. 2010) (internal

quotation marks and citation omitted). Defendants argue that the officers' alleged

behavior does not meet this standard. "An important factor in this analysis is whether a

defendant abused a position of authority." *Id.* "[T]he extreme and outrageous character

of a defendant's conduct may arise, not so much from what he says or does, but from

the defendant's improper use of a position of power which gives him the ability to

adversely affect the plaintiff's interests." *Id.* (internal quotation marks and citation

omitted). Plaintiffs have alleged that although they were not doing anything violent or

disruptive, the officers ordered them out of their car with guns drawn, swearing at them

and threatening them. This would suffice to state a claim on behalf of just about any

plaintiff, but it does so particularly in this case because Mnyofu's daughters at the time

of the incident were six and ten years old. *See id.* (behavior that might not otherwise

cross the threshold "may be deemed outrageous if the defendant knows that the plaintiff

is particularly susceptible to emotional distress") (internal quotation marks and citation

omitted).

Assault under Illinois tort law involves intentional conduct that places the plaintiff

in reasonable apprehension of an imminent battery. *McNeil v. Carter*, 318 Ill. App. 3d

939, 944, 742 N.E.2d 1277, 1281 (2001). Defendants again argue that plaintiffs have

alleged insufficient facts to establish an assault. The Court disagrees. Plaintiffs allege

that the officers ordered two children out of a car while waving their guns and making

threats. Even if the guns were not directly pointed at the children, the allegations could

easily support a finding that they were placed in reasonable fear of imminent bodily

harm.

20

For these reasons, the Court denies defendants' motion to dismiss counts six, eight, and nine.

**6.      Counts seven, ten, eleven, and twelve -**
**          additional claims on behalf of Mnyofu's daughters**

In count seven, Mnyofu asserts, on behalf of Ayanna and Makaylah, a claim against the Village for "violation of municipal policy [sic]."  The allegations in the amended complaint indicate that this is intended as a claim under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), that the officers' actions that violated the daughters' constitutional rights were the result of a municipal policy.  Mnyofu also asserts, on behalf of Ayanna and Makaylah, a claim against the Village for respondeat superior (count ten) and for municipal indemnification under 745 ILCS 9-102 (count twelve).  Mnyofu also asserts, on his own behalf, a claim for municipal indemnification against the Board in count eleven and against the Village in count twelve.

Defendants argue that count seven cannot survive because it is based on a single incident:  the officers' conduct during Mnyofu's March 2009 arrest.  "[A] single act . . . could constitute municipal policy within the meaning of 42 U.S.C. § 1983 . . . only when the act complained of is accomplished by a defendant with final policymaking authority."  *Looper*, 197 F.3d at 913.  The complaint contains no allegations to indicate that any of the officers possessed this authority.  The Court accordingly dismisses count seven.

Defendants argue that counts ten, eleven, and twelve cannot survive because none of the claims on which they are based survive.  Because the Court's rulings on the other allegations have established that claims remain against each defendant, however,

this is not the case. The Court therefore denies defendants' motions to dismiss counts ten, eleven, and twelve.

**Conclusion**

For the reasons stated above, the Court grants defendants' motions to dismiss in part and denies them in part [docket nos. 46, 52, and 58]. The Court dismisses counts two, four, five, and seven against all defendants; count one against all defendants other than Davis; and count three against all defendants other than Davis and Jones. The Court also limits the scope of count one as described in the body of this decision. The case is set for a status hearing on August 21, 2012 at 9:30 a.m. to set a schedule for further proceedings.

s/ Matthew F. Kennelly
MATTHEW F. KENNELLY
United States District Judge

Date: August 13, 2012